IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRUCE LAMONT BROWN, JR.,<br><br>Plaintiff,<br><br>    v.<br><br>EQUIFAX INFORMATION<br>SERVICES, LLC., et. al.,<br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 2:23-1922-RJC<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

      Before the Court are Motions for Judgment on the Pleadings (ECF Nos. 53 and 63) filed by Defendants Equifax Information Services, LLC ("Equifax") and TransUnion, LLC ("TransUnion").[1] The Moving Defendants seek judgment in their favor pursuant to Fed. R. Civ. P. 12(c) on the claims asserted against them by Plaintiff Bruce Lamont Brown, Jr. under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"). The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. The pending Motions have been fully briefed and are ripe for disposition.

---

[1] Given the material similarity of the arguments set forth by Equifax and TransUnion in their Motions for Judgment on the Pleadings, the Court will, where warranted, refer to Equifax and TransUnion collectively as the "Moving Defendants."

1

I.      **Factual Background & Procedural History**

At Count I of the Complaint, Mr. Brown asserts claims against Equifax and TransUnion for allegedly reporting inaccurate information on Mr. Brown's credit file without employing reasonable procedures to assure the maximum possible accuracy of the information in violation of Section 1681e(b) of the FCRA. At Count II, Mr. Brown asserts claims against Equifax and TransUnion for failure to conduct a reasonable reinvestigation of Mr. Brown's August 30, 2023 dispute letters in violation of 15 U.S.C. § 1681i(a)(1)(A). The United States Court of Appeals for the Ninth Circuit has explained:

> Under these FCRA provisions, consumer reporting agencies are required to follow reasonable procedures in obtaining credit information, 15 U.S.C. § 1681e; notify the credit information furnisher within five business days if there is a dispute, 15 U.S.C. § 1681i(a)(2)(A); conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, and if so, delete the item within 30 days of receiving the dispute, 15 U.S.C. § 1681i(a)(1)(A); and provide written notice of the reinvestigation results to the consumer within five days of its completion, 15 U.S.C. § 1681i(a)(6)(A).

*Phillips v. Archstone Simi Valley LLC*, 740 F. App'x 603, 604 (9th Cir. 2018).

While Mr. Brown's Complaint is lengthy, the relevant factual circumstances at issue are quite straightforward, and Mr. Brown effectively summarizes the facts alleged in this case as follows:

> On or about April 30, 2016, Mr. Brown purchased a motor vehicle secured by an automobile loan [with Ford Motor Credit Company LLC] (the "FMCC Account"). [ECF No. 1 at ¶ 61]. At some point in 2017, Mr. Brown fell behind on his monthly payments and the vehicle was repossessed in or around December 2017. *Id.*, ¶¶ 62-63. At the time of repossession, Mr. Brown owed approximately $29,000 on the FMCC Account, and the vehicle was subsequently sold at an auction in February 2018 for approximately $22,000. *Id.*, ¶¶ 63-64. Following the sale of the vehicle at auction, FMCC alleged that a deficiency balance of $7,130.33 remained. *Id.*, ¶ 64. On or about December 5, 2018, FMCC sued Mr. Brown in the Allegheny County, Magisterial District Court (Case No. MJ-05306-CV-0000300-2018, the "Magisterial Case"), seeking a judgment against Mr. Brown. *Id.*, ¶ 65. On or about February 14, 2019, FMCC obtained a default judgment against Mr. Brown in the amount of $7,302.08. *Id.*, ¶ 66. However, FMCC had failed to properly effectuate

> service of process upon Mr. Brown and[,] after Mr. Brown learned of the existence of the Magisterial Case, he retained an attorney and filed a civil appeal of the default judgment. *Id.*, ¶¶ 66-67.
>
> Mr. Brown's appeal of the default judgment, by operation of law in Pennsylvania, resulted in a new case filing in the Allegheny County, Pennsylvania Court of Common Pleas (Case No. AR-19-001024, the "Common Pleas Case"). [ECF No. 54-1 at 2]. Ultimately, the Judge in the Common Pleas Case struck FMCC's Complaint – and, accordingly, the accompanying default judgment – and ordered FMCC to file an Amended Complaint, which it did on August 1, 2019. [ECF No. 54-1]. Within the Amended Complaint, FMCC alleged that Mr. Brown "remain[ed] liable to [FMCC] for the sum of $7,130.33." *Id.*, at 6. In response, Mr. Brown filed an Answer and New Matter on August 5, 2019. [ECF No. 54-2]. Within the Answer and New Matter, Mr. Brown's response to FMCC's allegation that Mr. Brown remained liable in the amount of $7,130.33 was, "Denied that [Mr. Brown] remains liable to [FMCC] for the sum of $7,130.33." *Id.*, at 5. Furthermore, within Mr. Brown's "New Matter" – a Pennsylvania-specific portion of pleadings which contains, inter alia, affirmative defenses – he alleged that "[b]ecause the sale was not commercially reasonable [Mr. Brown] is not indebted to [FMCC]" and that therefore, "[FMCC's] complaint should be dismissed." *Id.*, at 5. Thereafter, the Common Pleas case was referred to arbitration and on August 1, 2022, an arbitration award was entered in favor Mr. Brown. [ECF No. 54-3] ("We, the undersigned arbitrators […] make the following award […]: Award for [Mr. Brown]."). FMCC subsequently appealed the arbitration award, and on August 1, 2022, a Non-Jury Verdict was entered [by an Allegheny County Court of Common Pleas judge] in Mr. Brown's favor affirming the arbitration award. [ECF No. 54-4, at 2] ("The Court finds for [Mr. Brown].").
>
> Following Mr. Brown's successful defense against FMCC's lawsuit, Mr. Brown learned that [the Moving Defendants] continued to report the FMCC Account in [Mr. Brown's] credit report with an account balance of $7,308 and a past due balance of $7,308. [ECF No. 1 at] ¶ 74. Thereafter, Mr. Brown submitted disputes to [the Moving Defendants] explaining that he did not owe anything to FMCC and that reporting any balance on the FMCC Account was inaccurate. *Id.*, ¶¶ 80-81. Mr. Brown's detailed disputes also attached copies of relevant court documents, including the Magisterial Case docket, the arbitration award from the Common Pleas Case, and the Non-Jury Verdict from the Common Pleas case. *Id.*, ¶ 82. In response, [the Moving Defendants] failed to correct any of [their] reporting of the FMCC Account, and to this day continue to report the FMCC Account has an account balance of $7,308 and a past due balance of $7,308. *See Id.*, ¶¶ 84-89, 97.

ECF No. 59 at 2-3 (footnotes omitted); ECF No. 69 at 2-4 (footnotes omitted).

By way of procedural background, Mr. Brown filed his Complaint (ECF No. 1) on November 7, 2023. On January 5, 2024, Equifax filed an Answer (ECF No. 28) to the Complaint.

3

TransUnion filed its operative Amended Answer (ECF No. 31) to Mr. Brown's Complaint on January 24, 2024. On February 26, 2024, the Court held an initial case management conference in this matter and issued a case management order setting forth discovery deadlines. On June 7, 2024, Equifax filed its Motion for Judgment on the Pleadings, along with a Brief in Support (ECF No. 54). Mr. Brown filed a Brief in Opposition (ECF No. 59) to Equifax's Motion on June 28, 2024, and Equifax filed a Reply (ECF No. 60) on July 5, 2024. On July 10, 2024, TransUnion filed its Motion for Judgment on the Pleadings, along with a Brief in Support (ECF No. 64). Mr. Brown filed a Brief in Opposition (ECF No. 69) to TransUnion's Motion on July 31, 2024, and TransUnion filed a Reply (ECF No. 72) on August 7, 2024. Mr. Brown filed a Notice of Supplemental Authority (ECF No. 74) on August 22, 2024.

While this matter has been pending, Mr. Brown reached settlement agreements with former defendants Ford Motor Credit Company LLC ("FMCC") and Experian Information Solutions, Inc. ECF Nos. 49 and 79. Accordingly, Equifax and TransUnion are the lone remaining Defendants in this case. On September 26, 2024, the Court entered an Order (ECF No. 82) staying discovery in this case at the request of Equifax and TransUnion pending the Court's resolution of the pending Motions for Judgment on the Pleadings.

## II.     Legal Standard

"The standard for deciding a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) is not materially different from the standard for deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Zion v. Nassan*, 283 F.R.D. 247, 254 (W.D. Pa. 2012); *see Harleysville INS. Co. of New York v. Cerciello*, No. 3:08-CV-2060, 2010 WL 11534317, at *2 (M.D. Pa. 2010) ("The standard of review used for a motion for judgment on the pleadings is substantively identical to that of a motion to dismiss."); *see also*

4

*Minnesota Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x. 143, 147 (3d Cir. 2011). Either motion may be used to seek the dismissal of a complaint based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 12(h)(2)(B). The only difference between the two motions is that a Rule 12(b) motion must be made before a "responsive pleading" is filed, whereas a Rule 12(c) motion can be made "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(b); Fed. R. Civ. P. 12(c); *Cerciello*, 2010 WL 11534317, at *2. "A court presented with a motion for judgment on the pleadings must consider the plaintiff's complaint, the defendant's answer, and any written instruments or exhibits attached to the pleadings." *Anthony v. Torrance State Hosp.*, No. CV 3:16-29, 2016 WL 4581350, at *1 (W.D. Pa. 2016) (citing *Perelman v. Perelman*, 919 F.Supp.2d 512, 521 (E.D. Pa. 2013)).

The Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). The motion will be granted if the plaintiff has not articulated enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557). It is not enough for a plaintiff to allege mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial

5

experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679)).

### III.   Discussion

The parties agree that Mr. Brown must plead an inaccuracy in credit reporting for each of his FCRA claims to survive. *See* ECF No. 54 at 4; ECF No. 59 at 1; ECF No. 62 at 2.  Count I explicitly relies on the reporting of allegedly inaccurate information on Mr. Brown's credit files. *See Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 902 (3d Cir. 2011) ("In order to make out a prima facie violation of section [1681e(b)], the [FCRA] implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information." (citations omitted)).  With respect to reinvestigation claims such as Count II, the Third Circuit has held that, "without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail." *Bibbs v. Trans Union LLC*, 43 F.4th 331, 344 (3d Cir. 2022) (quoting (*DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008)).  "A report is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[ ]' effect." *Schweitzer*, 441 F. App'x at 902.  "In other words, a consumer can demonstrate an inaccuracy where a report was materially misleading or incomplete, even if it was technically accurate." *Berry v. Experian Info. Sols., Inc.*, 115 F.4th 528, 536 (6th Cir. 2024).

The Moving Defendants' Motions turn only on the issue of whether Mr. Brown has sufficiently alleged that the Moving Defendants reported a *factual* inaccuracy on Mr. Brown's credit reports.  If he has not, Defendants argue, he cannot succeed on his FCRA claims. Importantly, the Moving Defendants argue that Plaintiff has pled the reporting of a debt that is subject to a legal dispute, rather than a factual inaccuracy.  "A clear line has not been drawn

between legal and factual inaccuracies in the FCRA context. . . . The paradigmatic example of a legal dispute is when a consumer argues that although his debt exists and is reported in the right amount, it is invalid due to a violation of law." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021).

At the heart of this issue is the lawsuit filed against Mr. Brown by FMCC to collect the deficiency balance between the $29,000.00 owed on the loan and the approximately $22,000 sale price of the vehicle, including the legal effect of the decisions rendered by the Court of Common Pleas of Allegheny County and Mr. Brown's interpretation thereof. Equifax summarizes the Moving Defendants' essential argument as follows:

> [T]he State Court Action does not address (i) the reporting of the FMCC Account; (ii) whether FMCC may continue to attempt collection for the unpaid balance via other non-judicial means; or (iii) whether FMCC is entitled to write-off the unpaid debt towards the Account. Indeed, all of these issues require legal determinations which [credit reporting agencies ("CRAs")] – like Equifax – are not obligated to resolve under the FCRA and, as a result, Plaintiff's Complaint should be dismissed in its entirety.

ECF No. 54 at 5; *see also* ECF No. 64 at 5 ("Courts have consistently held that the validity of underlying debts is a legal question that CRAs are neither equipped nor required to resolve under the FCRA."). Equifax further argues:

> Plaintiff effectively claims that the Arbitration Award and Non-Jury Verdict had the legal effect of extinguishing the underlying delinquency balance he incurred towards the Account, thus rendering the charged-off status reporting on his Equifax credit file inaccurate. . . . Equifax, however, accurately reported that FMCC ultimately charged off Plaintiff's outstanding balance as bad debt that it was unlikely to recover. Plaintiff's claim that the vague Arbitration Award and Non-Jury Verdict, standing alone, had the legal effect of extinguishing the underlying debt in its entirety is entirely based on his own subjective interpretation.

ECF No. 54 at 8; *see also* ECF No. 64 at 5 ("All Plaintiff has done is contest his fault through the introduction of an arbitration award and non-jury verdict for Plaintiff in the State Court Action with FMCC, which doesn't explain the basis for why the court ruled in Plaintiff's favor."). The

Moving Defendants further take issue with Mr. Brown's assertion that the Moving Defendants willfully violated the FCRA.

In response, Mr. Brown argues that "the facts pleaded by Mr. Brown clearly and sufficiently demonstrate that Mr. Brown's disputes related to factual inaccuracies reported by [the Moving Defendants] which required no legal analysis in order for [the Moving Defendants] to properly reinvestigate and correct [their] flagrantly inaccurate reporting." ECF No. 59 at 1. He further argues:

> As a threshold issue, [the Moving Defendants'] Motion[s] should be denied because [they are] based on a flawed premise. Specifically, [the Moving Defendants' briefing states] repeatedly . . . that Mr. Brown's basis for bringing this lawsuit relates to [the Moving Defendants'] reporting of the FMCC Account as a "charge off" account. . . . There is nothing in Mr. Brown's Complaint which states the basis for this litigation is related to [the Moving Defendants'] reporting of the FMCC Account as a "charge off" account. . . . Mr. Brown's Complaint makes clear that the basis for this litigation, as it relates to [the Moving Defendants], is that [the Moving Defendants] continued to report that Mr. Brown owed an account balance and/or past due balance in the FMCC Account even though Mr. Brown had obtained a court order to the contrary.

*Id.* at 4-5 (emphasis omitted). Mr. Brown seemingly does not challenge the accuracy of the reporting of the FMCC Account as "charged off," though he has alleged that he was harmed by that reporting, and instead relies on the Moving Defendants' reporting of a past due balance owed on the FMCC Account after Mr. Brown obtained two judgments in his favor in state court. *Id.* at 6; *see also* ECF No. 69 at 5-6.

In opposing the Moving Defendants' Motions for Judgment on the Pleadings, Mr. Brown further argues that:

> [C]urrent trends in jurisprudence reflect the fact that viewing allegations brought under the FCRA through this narrow "factual inaccuracy versus legal dispute" lens is not the appropriate standard. Courts of Appeals have begun to reject the "factual inaccuracy" and "legal dispute" dichotomy in favor of a far more practical approach. Namely, the current prevailing – and appropriate – standard focuses on whether the alleged inaccuracy is "objectively and readily verifiable."

8

ECF No. 59 at 7-8. Mr. Brown asserts that the purported inaccuracy at issue was "objectively and readily verifiable" because both an arbitration panel and a state court judge both ruled in Mr. Brown's favor in a lawsuit wherein FMCC attempted to collect the debt reported by the Moving Defendants. *See id.* at 10 ("The legal effect of these adjudications is beyond obvious: Mr. Brown's defense and/or his affirmative defense – both of which clearly and unambiguously assert that Mr. Brown was not liable or indebted to FMCC for any amount owed on the FMCC Account – were successful, and that consequently, Mr. Brown did not owe any remaining balance to FMCC. Yet, despite this verdict in favor of Mr. Brown, [the Moving Defendants] continued to inaccurately report the FMCC Account with an account balance of $7,308 and a past due balance of $7,308, both of which became inaccurate the moment the arbitration award was entered.").

Initially, because Mr. Brown does not challenge the accuracy of the reporting of the FMCC Account as "charged off," that issue is not before the Court, and it need not be addressed in any detail. Though the parties have devoted some resources to discussing their incredulity at the other side's position, the Court will dismiss the Motions for Judgment on the Pleadings as moot insofar as the Motions concern the reporting of the FMCC Account as "charged off."

That said, the parties have adequately briefed the issue of the Moving Defendants' reporting of a past due balance on the FMCC Account, as well as the effect of the legal rulings entered in Mr. Brown's favor in the state court lawsuit filed by FMCC in the Court of Common Pleas of Allegheny County. These issues are also sufficiently raised in the Complaint. *See, inter alia,* ECF No. 1 at ¶ 81 ("In Plaintiff's dispute letters, he explained that he does not owe anything to FMCC and that reporting any balance on the FMCC Account was inaccurate."). Accordingly, those issues are ripe for analysis herein.

As touched upon above, the parties' disagreement turns entirely on whether Mr. Brown has alleged, and the relevant case law requires, the reporting of a factual inaccuracy as opposed to a legal dispute. Mr. Brown points to out-of-circuit appellate case law that has suggested that the standard should focus not on whether the alleged inaccuracy is factual or legal, but, rather, on whether the alleged inaccuracy is objectively and readily verifiable. *See Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1363 (11th Cir. 2024) ("Whether the alleged inaccuracy is factual or legal is beside the point. Instead, what matters is whether the alleged inaccuracy was objectively and readily verifiable."). It bears noting that no party suggests that the Third Circuit has explicitly adopted the standard proposed by Mr. Brown. The distinction in the applicable standard is ultimately irrelevant, as this Court finds that Mr. Brown's claims would survive at this stage under either standard for the reasons discussed below.

The Moving Defendants cite to the following cases in arguing that they could not ascertain the inaccuracy of their reporting through either reasonable procedures or reinvestigation: *Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 891 (9th Cir. 2010) ("Because CRAs are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims."); *Perry v. Toyota Motor Credit Corp.*, No. 1:18CV00034, 2019 WL 332813, at *5 (W.D. Va. Jan. 25, 2019) ("The proper resolution of a legal defense to payment of the debt is not generally the kind of error that a CRA could discover or resolve through a review of information from consumers, furnishers, or its own files. In addition, the Fourth Circuit has expressed concern about collateral attacks on underlying debts via FCRA suits against CRAs. Accordingly, Perry's contention that Experian inaccurately reported his account as due and owing, with a past-due balance[,] fails to state a claim under FCRA §§ 1681e(b) and 1681i."); *Phillips*, 740 F. App'x at 604 ("[C]redit reporting agencies

are not tribunals required to adjudicate disputes regarding the 'legal validity' of a debt."); *DeAndrade*, 523 F.3d at 68 ("Whether the mortgage is valid turns on questions that can only be resolved by a court of law, such as whether DeAndrade ratified the loan.  This is not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue that a credit agency such as Trans Union is neither qualified nor obligated to resolve under the FCRA."); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015) ("A reasonable reinvestigation, however, does not require CRAs to resolve legal disputes about the validity of the underlying debts they report."); *Denan v. Trans Union LLC*, 959 F.3d 290, 296 (7th Cir. 2020) ("In this conclusion we join the First, Ninth, and Tenth Circuits in holding that a consumer's defense to a debt 'is a question for a court to resolve in a suit against the [creditor,] not a job imposed upon consumer reporting agencies by the FCRA.'" (citations omitted)).

     To be clear, this Court finds the case law cited by the Moving Defendants to be undeniably well-reasoned and sensible.  Those cases involved *unresolved* legal disputes about the validity or ownership of a debt.  The Moving Defendants' argument fails because there existed no *unresolved* legal dispute following judgment being entered in Mr. Brown's favor in the state court proceedings.  In those state court proceedings, a court of law unequivocally ruled on the issue of whether Mr. Brown was liable for the debt reported by the Moving Defendants.  Accordingly, the Moving Defendants did not need to apply the law to facts under the circumstances alleged by Mr. Brown.  *See Chuluunbat*, 4 F.4th at 568 ("[T]he central question is whether the alleged inaccuracy turns on *applying* law to facts or simply *examining* the facts alone."); *see also DeAndrade*, 523 F.3d at 68 (holding"[w]hether the mortgage is valid turns on questions that can only be resolved by a court of law, such as whether DeAndrade ratified the loan"; explaining that the proper forum for resolution of that issue was in a suit against the creditor; and stating that ,"[i]f a court *had ruled*

11

*the mortgage invalid and Trans Union had continued to report it as a valid debt, then DeAndrade would have grounds for a potential FCRA claim.*" (emphasis added)); *Carvalho*, 629 F.3d at 892 ("While this may be true, it merely reinforces our view that a consumer who disputes the legal validity of an obligation should do so directly at the furnisher level. *If successful, the consumer can clear her credit report without the need for any explanatory statements*." (emphasis added).

In *Dennis v. BEH-1, LLC*, 520 F.3d 1066 (9th Cir. 2008), a case very similar to this one, a credit reporting agency inaccurately reported the entry of a state court judgment against a debtor when, instead, the case had actually been dismissed following settlement. The Ninth Circuit held:

> Experian's credit report on Dennis *is* inaccurate. Because the case against Dennis was dismissed, there could have been no "Civil claim judgment" against him: "A dismissal without prejudice . . . has the effect of a final judgment in favor of the defendant . . . ." Dennis has made the prima facie showing of inaccuracy required by sections 1681e and 1681i.

*Dennis*, 520 F.3d at 1069. The *Dennis* court further explained: "[w]hen conducting a reinvestigation pursuant to 15 U.S.C. § 1681i, a credit reporting agency must exercise reasonable diligence in examining the court file to determine whether an adverse judgment has, in fact, been entered against the consumer." *Id.* at 1071. In *Chuluunbat*, the Seventh Circuit held quite plainly:

> *A legal question* may also be resolved *as a matter of fact if a tribunal*—such as a court or arbitrator—*has adjudicated the matter*. Taking notice of a previously resolved legal dispute involves some knowledge of the legal impact of court decisions, *but it does not require the consumer reporting agency to make any legal determinations about the underlying claim*.

*Chuluunbat*, 4 F.4th at 568 (emphasis added) (citations omitted); *see also id.* at 569 ("If the plaintiffs *presented court judgments to the consumer reporting agencies showing that the legal ownership of their debts have been adjudicated, the investigation may have been factual in nature*." (emphasis added)); *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 271 (2d Cir. 2023) ("[I]f a legal question is *sufficiently settled so that the import on a particular debt is readily and*

12

*objectively verifiable*, the FCRA sometimes requires that the implications of that decision be reflected in credit reports." (emphasis added)).

Mr. Brown has also cited to *Berry v. Experian*, another similar case involving a credit reporting agency that reported that an individual owed past due child support when, instead, a court had issued two orders stating that the child support requirement was abated pending further court order. In *Berry*, the Sixth Circuit held that "Experian was capable of relying on a legal[] court document of 'unquestioned authenticity,' and faces liability when 'it ignores or overlooks documents of unquestioned authenticity, even if they relate to a legal dispute.'" *Berry*, 115 F.4th at 539 (quoting *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 815 (7th Cir. 2023)); *see also Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1368 (11th Cir. 2024) ("[C]onsumers in Holden and Mayer's position are not without recourse. . . . [C]onsumers in Holden's and Mayer's shoes *could sue a furnisher for a declaration that they no longer owed a debt*. With that declaration in hand, [a consumer] would have a much stronger cudgel with which to force a furnisher to stop reporting [a] debt to a reporting agency. *Or a consumer could go directly to the reporting agency with the declaration and get the reporting agency to take it off [his or] her credit history*." (emphasis added) (internal quotation marks omitted) (footnote omitted) (quoting *Milgram v. Chase Bank USA, N.A.*, 72 F.4th 1212, 1217 (11th Cir. 2023) (Rosenbaum, J., concurring))).

This Court joins the chorus of courts that have held that a credit reporting agency is not required to apply the law to facts or make legal determinations regarding an *unresolved* legal issue in reporting credit information. But that is not the issue presented herein. Mr. Brown proved successful, both before a panel of arbitrators in an arbitration proceeding and a common pleas judge in a non-jury trial, in a lawsuit, which has not been appealed, filed by his creditor seeking to

collect a deficiency balance that the Moving Defendants continued to report on Mr. Brown's credit reports. The Moving Defendants acknowledge, at least at this juncture, that they understand the nature of the underlying state court proceedings. *See* ECF No. 54 at 2 ("Plaintiff also admits that FMCC sold the Vehicle at auction for $22,000, *and that FMCC filed the State Court Action to collect the deficiency balance of $7,308.00*." (emphasis added)); *see also* ECF No. 64 at 7 ("FMCC filed the underlying State Court Action in the Allegheny County, Pennsylvania Magisterial District Court against Plaintiff, *seeking collection of the $7,130.33 deficiency balance owed towards the Account following the sale of the Vehicle at auction*." (emphasis added)); ECF No. 1 at ¶ 65 ("On or about December 5, 2018, FMCC sued Plaintiff in the Allegheny County, Pennsylvania Magisterial District Court for the unpaid balance on the FMCC Account *in an attempt to collect the deficiency* (Case No. MJ-05306-CV-0000300-2018).") (emphasis added)).

The Moving Defendant themselves have submitted documentation that shows that judgment was entered in Mr. Brown's favor in a lawsuit filed by FMCC to recover a deficiency balance of approximately $7,300, i.e., the debt reported by the Moving Defendants. *See* ECF Nos. 54-1 - 4; 64-1 - 4. It is, quite frankly, highly notable that the Moving Defendants, in seeking judgment on the pleadings in this case, cite to numerous *other* cases wherein *they* were named as defendants and proved successful, but in this case plead total ignorance as to the effect of a judgment in a defendant's favor in an undeniably simple lawsuit to recover an alleged debt.[2] As alleged, Defendants were not asked to resolve a legal issue, they were asked to correct factually inaccurate information in their reporting. TransUnion itself cites a case that is damning to their argument in this case:

> The correct way to resolve legal defenses to [the lenders'] loans was in a lawsuit against those lenders. *"If a court had ruled the [loans] invalid and Trans Union had continued to report it as a valid debt, then [plaintiffs] would have grounds for*

---

[2] FMCC's Amended Complaint was two-pages long and alleged a single breach of contract claim.

14

> *a potential FCRA claim." DeAndrade*, 523 F.3d at 68. *Because no formal adjudication discharged plaintiffs' debts*, no reasonable procedures could have uncovered an inaccuracy in plaintiffs' credit reports.

*Denan*, 959 F.3d at 296 (emphasis added); *see also id.* at 295 ("What plaintiffs call 'legally inaccurate' and 'legally incorrect' information amounts to *non-adjudicated* legal defenses to their debts. One might speculate that a loan is illegal, as plaintiffs do, but it would be just speculation. Only a court can fully and finally resolve the legal question of a loan's validity" (emphasis added)).

In this case, Mr. Brown *has* alleged that formal adjudication of the debt reported by the Moving Defendants took place, with judgment being entered in Mr. Brown's favor as to FMCC's attempt to collect the alleged deficiency debt. Accordingly, the Court finds that Plaintiff has pled facts sufficient to plausibly allege that experienced litigators such as the Moving Defendants could objectively and readily verify that such a judgment establishes that Mr. Brown did not owe FMCC the debt the Moving Defendants continued reporting. Further, even under the more stringent standard cited by the Moving Defendants, it is a fact that judgment was entered in Mr. Brown's favor on a claim seeking to recover the debt reported by the Moving Defendants. The legal dispute at issue was thus unquestionably resolved as a matter of fact. Accordingly, this case involves the alleged reporting of a factual inaccuracy, not a legal question for credit reporting agencies to adjudicate.

To be sure, the decisions rendered in the state court proceedings provide nothing in terms of the basis for those decisions. It is not clear whether Mr. Brown succeeded on his affirmative defense or whether FMCC simply failed to carry its burden of proving that Mr. Brown owed a debt. That said, the Moving Defendants acknowledge awareness that FMCC sued for the deficiency balance the Moving Defendants reported on Mr. Brown's credit report. FMCC lost, and Mr. Brown won in that lawsuit. The Moving Defendants were not parties to that lawsuit, so

it is no surprise that the decision did not speak to the reporting of the FMCC Account. To require every court confronted with a creditor-debtor case to not only adjudicate the debt, but to also speak to the reporting of the debt by credit reporting agencies, would be unquestionably unrealistic, and, more importantly, would place a burden borne by credit reporting agencies on state tribunals. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("We also agree with the cogent observation by the Fifth Circuit that the plain language of the statute places the burden of reinvestigation on the consumer reporting agency.").

The Court further notes that it cannot perceive what the Moving Defendants are attempting to convey in taking issue with the failure of the state court decisions to speak to "whether FMCC may continue to attempt collection for the unpaid balance via other *non-judicial* means." Again, it is simply undisputed that FMCC sued for breach of contract to collect a debt in state court, and it lost. Contracts are legal instruments. As the parties note repeatedly, courts resolve legal disputes. "Courts sometimes employ different actors to help answer certain questions, but the ultimate result is a legal determination (e.g., that a party is liable)." *Chuluunbat*, 4 F.4th at 568. Judgment by the state court in Mr. Brown's favor on a claim to collect the debt at issue means that Mr. Brown, as a matter of fact, is not liable for the debt reported by the Moving Defendants. Without further exploration, and excepting a voluntary payment by Mr. Brown to FMCC, the Court is simply at a loss as to what the Moving Defendants are attempting to convey by insinuating that FMCC might be able collect a contractual debt via non-judicial means.

The Court makes no finding at this time as to whether the Moving Defendants utilized reasonable procedures to assure the maximum possible accuracy of the information they reported or whether they conducted a reasonable reinvestigation in this case. The Moving Defendants' procedures for ensuring that they report factually accurate information and, when notified of a

possible inaccuracy, properly reinvestigate the same, are plainly factual issues that the Court cannot resolve at this juncture. The Court's holding is limited to finding that Plaintiff has sufficiently pled an actionable inaccuracy, and thus states a prima facie case under Sections 1681e(b) and 1681i of the FCRA. For that reason, the Court will deny the Moving Defendants' Motions for Judgment on the Pleadings.

The Court agrees with Mr. Brown that the issue of willfulness is more properly addressed at the summary judgment stage. *See Dennis v. Trans Union, LLC*, No. CIV.A. 14-2865, 2014 WL 5325231, at *8 (E.D. Pa. Oct. 20, 2014) ("Ultimately, whether an act was done with knowing or reckless disregard for another's rights remains a fact-intensive question."); *see also Starkey v. Experian Info. Sols., Inc.*, 32 F. Supp. 3d 1105, 1111 (C.D. Cal. 2014) ("In any case, '[w]illfulness under the FCRA is generally a question of fact for the jury.'" (quoting *Edwards v. Toys "R" Us*, 527 F.Supp.2d 1197, 1210 (C.D. Cal. 2007))); *Rogers v. Wells Fargo Bank, N.A.*, No. 19-CV-02596, 2020 WL 1081721, at *7 (N.D. Ill. Mar. 6, 2020) ("All too often, willfulness is a fact-specific inquiry that courts cannot resolve on a motion to dismiss."). Accordingly, the Moving Defendants' Motions will be denied without prejudice to the Moving Defendants re-raising this issue later in this litigation.

## IV. Conclusion

For the reasons discussed above, the Court will deny the Moving Defendants' Motions for Judgment on the Pleadings. An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: March 31, 2025

cc: All counsel of record